**F I L E D**
United States Court of Appeals
Tenth Circuit

**DEC 1 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

TYRONE L. LEE,

     Plaintiff-Appellee,

v.

JOHN NICHOLL; JEANNIE JOLLY;
JAMES GRANT, Individually and as
Road and Bridge Superintendent of the
Arapahoe County Department of
Highways and Engineering; JAMES
HINKLE, Individually and as Assistant
Road and Bridge Superintendent of the
Arapahoe County Department of
Highways and Engineering,

     Defendants,

and

WILLIAM GIBBS, Individually and as
Director of Arapahoe County Department
of Highways and Engineering;
ARAPAHOE COUNTY BOARD OF
COUNTY COMMISSIONERS;

     Defendants-Appellants.

No. 98-1359

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 95-D-682)**

L. Cary Unkelbach (Kathryn L. Schroeder with him on the briefs), Arapahoe County Attorney's Office, Littleton, Colorado, for Defendants-Appellants.

John Kokish (Brian Kidnay with him on the briefs), Castle Rock, Colorado, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge; **PORFILIO** and **KELLY**, Circuit Judges.

---

**PORFILIO**, Senior Circuit Judge.

---

William Gibbs and the Board of County Commissioners (BOCC) for Arapahoe County appeal the district court's disposition of a 42 U.S.C. § 1983 claim brought by a former county employee, Tyrone Lee. Believing he had been terminated in retaliation for exercising his First Amendment right to free speech, Mr. Lee sued the Board of County Commissioners both as a body and individually as well as his direct supervisors in their individual and official capacities. The district court granted qualified immunity to all those sued in their individual capacity except Mr. Gibbs. The district court also denied summary judgment to the BOCC, finding it was potentially liable for its own actions as well as those of Mr. Gibbs. We affirm the district court's denial of qualified immunity to Mr. Gibbs, and hold the district court's refusal to grant summary judgment to the BOCC to be an interlocutory question over which we have no jurisdiction.

Mr. Lee worked for the Highway Department of Arapahoe County, Colorado, from 1982 until 1994. From 1991 to 1994, he operated a road grader, and from January 1992

- 2 -

to 1994, he was supervised by Mr. Gibbs. The undisputed facts indicate that beginning in 1991, Mr. Lee became a very "vocal" employee. He wrote at least seven memos to his supervisors and the BOCC on topics ranging from alleged safety violations and fiscal mismanagement to complaints about the brand of road grader purchased by the County. During this same period Mr. Lee received several written and verbal warnings for insubordinate behavior, and the County received at least two complaints from the public about Mr. Lee's job performance. In January 1994, Mr. Gibbs terminated Mr. Lee, citing his "insubordinate and disruptive behavior."

Mr. Gibbs contends the district court erred in denying him qualified immunity from suit. We treat a denial of qualified immunity as an appealable final decision for purposes of invoking this court's jurisdiction under 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Whether a government official receives qualified immunity is a legal question which we review *de novo*. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). Thorough *de novo* review is also compelled by the presence of First Amendment issues in this case, obligating us to insure that a judgment "does not constitute a forbidden intrusion on the field of free expression." *Rankin v. McPherson*, 483 U.S. 378, 386 n. 9 (1987) (quoting *Bose Corp. v. Consumers Union*, 466 U.S. 485, 499 (1984)).

In analyzing Mr. Gibbs' claim of qualified immunity, we are guided by a clear framework. Our first step is to determine whether Mr. Lee has alleged a true violation of

his freedom of speech.  To make this determination, we use  a two-part inquiry: (1) whether the speech relates to matters of public concern, *Connick v. Meyers*, 461 U.S. 138, 146 (1983); and (2) whether the employee's interest in the speech outweighs the government's interest in regulating the speech in order to maintain an efficient workplace, *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).  If the *Connick/Pickering* analysis reveals that the employee's right to free speech has been violated, then the second step is to determine whether the right violated was clearly established at the time the adverse action was taken against the employee.

We turn first to whether Mr. Lee's speech related to matters of public concern. The record indicates during the course of his employment, Mr. Lee authored at least seven memos to his supervisors or to the county commission.  The district court analyzed each of the memos separately and concluded three memos, two written in October and December 1991 addressing safety violations on the "Warren/Wabash Project," and one written on November 11, 1993, dealing with safety at "The Parker Road Intersection," constituted matters of public concern.  On appeal, Mr. Gibbs and the BOCC challenge the district court's determination that the November 11, 1993 memo is protected by the First Amendment, but appear to concede the 1991 memos were protected.  This concession does not affect Mr. Gibbs' appeal of the denial of qualified immunity because the district court ruled Mr. Gibbs was only potentially liable for retaliating against the 1993 memo since he was not supervising Mr. Lee when the 1991 memos were written.

Under the test established in *Connick,* the November 11, 1993 memo addresses matters of public concern if it may be "fairly considered as relating to any matter of political, social, or other concern to the community." 461 U.S. at 146. *Connick* also mandates that the speech not be considered in a vacuum; we must examine the "content, form, and context" of the statement. *Id.* at 147-48.

The content of the November 11, 1993 memo relates almost exclusively to traffic safety and snow removal at a particular intersection, both undoubtedly subjects with which the public has a general concern. However, under the law of this Circuit, it is insufficient that the speech relates generally to a subject matter of public importance. Instead, the speech must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of the government." *Wilson v. City of Littleton*, 732 F.2d 765, 768 (10th Cir. 1984). Mr. Gibbs and the BOCC argue the November 11, 1993 memo is not helpful to the public because it contains technical jargon which renders it incomprehensible to the average reader. After reading the November 11, 1993 memo, we conclude, although a general reader might not comprehend Mr. Lee's proposal to add "an asphalt apron" to the road, the reader would understand the County has been aware of, and failed to remedy, a potentially serious road problem. Speech that calls attention to a government's failure to discharge its governmental duties generally constitutes a matter of public concern. *David v. City of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996), *cert. denied*, 118 S. Ct. 157 (1997).

We must also examine the memo's form and context. This inquiry, at least in part, requires analysis of the subjective intentions of the speaker. As we explained in *Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996), we must examine "the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." The BOCC and Mr. Gibbs contend Mr. Lee's use of an internal memo addressed only to his supervisors rather than a direct communication to the media or the public indicates he was motivated by personal conflicts with his supervisors rather than a genuine concern over public safety. In *Considine v. Board of County Commissioners*, 910 F.2d 695, 700 (10th Cir. 1990), we relied in part on the fact an employee spoke directly to members of the media in our determination the speech addressed a matter of public concern. We do not believe, however, the converse of *Considine* –that failure to speak publicly indicates speech was not made on a matter of public concern– is true. Indeed, the weight of case law demonstrates the choice to speak through a private forum, rather than a public one, does not remove the speech from First Amendment protection. *See Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 415-16 (1979) (holding First Amendment protection applies when a public employee arranges to communicate privately with employer rather than express his view publicly)*; Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988) (employee's complaints made privately to City Administrator still held to

be a matter of public concern).[1] The fact Mr. Lee's November 11, 1993 memo was only circulated internally does not persuade us that his speech was not motivated by public concern. We hold, based on both content and context, that Mr. Lee's November 11, 1993 memo addressed an issue of public concern.

We must next consider whether Mr. Lee's interest in the protected speech is outweighed by the County's interest in regulating his speech to maintain an efficient workplace. *Pickering*, 391 U.S. at 568. The district court found the BOCC and Mr. Gibbs made no allegations that the November 11, 1993 memo caused any disruption in the operation of the road and maintenance department or in Mr. Lee's ability to perform his own job. That finding has not been challenged on appeal. We thus conclude, under

---

[1] We note that overly emphasizing the forum of speech used by the employee threatens to upset the *Pickering* balance. Requiring employees to speak publicly to have their speech qualify as a matter of public concern may jeopardize that same speech in the second step of the *Pickering* balance, where the employee's interest in the speech is weighed against the government's interest in preventing undue disruption in the workplace. In several cases this court has found employee speech to be unnecessarily disruptive because the employee opted to "go public" before utilizing internal lines of communication. *See Lytle v. City of Haysville,* 138 F.3d 857, 864 (10th Cir. 1998) (holding an employee's speech to be unnecessarily disruptive in part because the speaker opted to make his statements public before pursuing his allegations internally); *Johnsen v. Independent School District No. 3*, 891 F.2d 1485, 1493 (10th Cir. 1989) (nurse's failure to use internal complaint procedure before making public statements held against her in *Pickering* balance); *Conaway v. Smith*, 853 F.2d 789, 798 (10th Cir. 1988) (noting plaintiff had used "less disruptive internal channels, rather than going outside the city administration. The relatively low-key context in which [plaintiff] voiced his complaints further persuades us that the *Pickering* balance tilts in his favor.").

the **Pickering** balancing test, the November 11, 1993 memo is entitled to First

Amendment protection.

The final step in reviewing the district court's denial of qualified immunity to Mr.

Gibbs is to determine whether the right violated was clearly established at the time of Mr.

Lee's termination. **Siegert v. Gilley**, 500 U.S. 226, 232 (1991). To be "clearly

established,"

> [t]he contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right. This is
> not to say that an official action is protected by qualified immunity unless
> the very action in question has previously been held unlawful, but it is to
> say that in the light of pre-existing law, the unlawfulness must be apparent.

**Anderson v. Creighton**, 483 U.S. 635, 640 (1987) (citations omitted). Mr. Gibbs

contends he could not reasonably have been expected to know that Mr. Lee's November

11, 1993 memo was constitutionally protected.

The case law of this Circuit makes it amply clear public employee speech alleging

a danger to public health or safety is protected by the First Amendment. In **Considine**,

910 F.3d at 699-700, we held speech by the director of a county division of community

and recreational resources alleging "public health, safety and welfare" violations at

various county project sites constituted speech on a matter of public concern. **See also**

**Johnsen v. Independent School District No. 3**, 891 F.2d 1485, 1490 (10th Cir. 1989)

(holding a public school nurse's speech critical of the school district's medication policy

was a matter of public concern in part because of its potential impact on the health and

safety of school children); ***Conaway v. Smith***, 853 F.2d 789, 795 (10th Cir. 1988) (holding an employee memo notifying the county of substandard electrical work was protected by the First Amendment in part because it alleged a threat to public health and safety). We hold an employer in Mr. Gibbs' position could reasonably have been expected to know employee speech concerning public safety is protected by the First Amendment. ***Anderson v. Creighton***, 483 U.S. at 641. We thus affirm the district court's denial of Mr. Gibbs' claim of qualified immunity.

The district court refused to grant summary judgment to the BOCC on two independent bases. First, the district court found summary judgment would be improper because were a jury to determine Mr. Gibbs had indeed fired Mr. Lee in retaliation for writing the November 11, 1993 memo, then the BOCC could be held liable for Mr. Gibbs' actions. Second, the district court found the BOCC was potentially directly liable for any independent action it took against Mr. Lee for writing the 1991 memos. The BOCC appeals both determinations.

Unlike the denial of qualified immunity to Mr. Gibbs, however, the denial of the BOCC's motion for summary judgment is not a final decision under 28 U.S.C. § 1291 and is not normally reviewable by this Court. The BOCC concedes this point, but argues nonetheless that we should hear its appeal under the doctrine of pendent appellate jurisdiction. That doctrine gives us jurisdiction to review an otherwise non-appealable decision if it is "inextricably intertwined" with a properly appealable decision. ***Moore v.***

*City of Wynnewood*, 57 F.3d 924, 929 (10th Cir. 1995). To be inextricably intertwined, however, the pendent claim must be "coterminous with, or subsumed in," the claim properly before the court. *Id.*

The exercise of pendent appellate jurisdiction would be improper in this case; neither of the theories under which the BOCC is potentially liable is coterminous with Mr. Gibbs' qualified immunity claim. As for the BOCC's liability for Mr. Gibbs' actions, our conclusion that Mr. Lee's November 11, 1993 memo is protected by the First Amendment means the BOCC remains potentially liable. Furthermore, whether the BOCC is ultimately held responsible for Mr. Gibbs' actions depends on the determination of legal issues which are not coterminous with our review of Mr. Gibbs' qualified immunity claim, principally whether Mr. Gibbs had "final policymaking authority" for the County. *See Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Similarly, the issue of the BOCC's liability for its own actions in terminating Mr. Lee is not coterminous with Mr. Gibbs' liability. The district court found the BOCC potentially liable for actions taken in response to Mr. Lee's October and December 1991 memos. Mr. Gibbs' potential liability, however, is based entirely on the November 11, 1993 memo. Thus, disposition of Mr. Gibbs' qualified immunity claim does not settle the question of the BOCC's liability for its own actions. Consequently, we decline to exercise pendent appellate jurisdiction over the BOCC's claim that the district court erred in refusing to grant it summary judgment.

**AFFIRMED.**