**Dennis BEACH, Plaintiff,**

v.

**CITY OF OLATHE, KANSAS, et al., Defendants.**

**No. CIV.A.99–2210–GTV.**

United States District Court, D. Kansas.

Feb. 1, 2002.

Stephen D. Bonney, Bonney Law Offices, Kansas City, MO, Fred L. Slough, Slough, Connealy, Irwin & Madden, Kansas City, MO, for plaintiff.

Daniel B. Denk, Ryan B. Denk, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendants.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff, Dennis Beach, brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, the City of Olathe, Phillip Major, individually and in his official capacity as Chief of Police of the City of Olathe, and Susan Sherman, individually and in her official capacity as City Manager of the City of Olathe, retaliated against him for exercising his First Amendment rights to freedom of speech and freedom of association. The case is before the court on defendants' motion for summary judgment (Doc. 183). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on the evidence submitted with the summary judgment papers and viewed in the light most favorable to plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff has been employed by the City of Olathe as a police officer since 1978. In July 1997, plaintiff was assigned to work in the police department's Investigation Unit. Plaintiff's job duties in the Investigation Unit included supervising and training detectives assigned to investigate property crimes.

Beginning in the Fall of 1997, issues regarding compensation, staffing, equipment, facilities, morale, and the leadership and ethics of defendant Major, who was at the time the Chief of Police of the Olathe Police Department, became a topic of conversation among many members of the police department. During this same period of time, plaintiff communicated with Olathe City Council members, including defendant Sherman, who was at the time the City Manager for the City of Olathe, about some of the same issues. Plaintiff, other Olathe police officers, and a local Fraternal Order of Police lodge ("FOP") representative also publicly voiced concerns at city council meetings, several of which were called specifically to discuss issues relating to problems within the police department. In addition, the FOP, of which plaintiff was a member, was playing an active political role in trying to institute change in the police department during this period of time.

By November 1997, plaintiff's and the FOP's interactions with the Olathe City

Council began to affect defendant Major. Specifically, defendant Major testified in deposition that the activities placed increased pressure on him and prompted city officials to first raise the possibility in November 1997 that he resign. Defendant Major also testified in deposition that, as a result of plaintiff's interactions with the city council, he suggested in a senior staff meeting in November 1997 that the police department should consider disciplining plaintiff because "[plaintiff] was just having an awful lot of contact with elected officials and . . . it was stirring things up." Defendant Major testified that the officers at the meeting ultimately determined that no discipline should be imposed at that time because "there wasn't any violation [they] could get a handle on."

In addition to his contacts with the city council in 1997, plaintiff also drafted a document in late 1997 or early 1998 entitled "Allegations of Unethical Conduct." The document consisted of a summary of allegations that plaintiff had heard being made by employees of the police department against defendant Major. The allegations included, among other things, accusations regarding defendant Major's work habits, his failure to comply with various laws and regulations, his abuse of his position, and his lack of support for police department employees. Plaintiff testified in deposition that he showed the document only to Captain John Bunker and Lt. Larry Griffin, the superior officers in his direct chain of command, and that he accidently handed the document to Detective Jennifer Morgan, a subordinate officer. Plaintiff also testified in deposition that he attempted to verify the truth of the allegations with other officers, including at least one allegation that Detective Morgan told him was false after plaintiff acciden-

tally handed the document to her. Defendant Major denies the accusations contained in the document.

In mid-January 1998, plaintiff spoke at a city council meeting about the police department's staffing problems. In an attempt to highlight the staffing problems, plaintiff showed council members several boxes of unworked crime reports that he had taken from the police department.[1] According to an affidavit executed by Lt. Griffin, defendant Major approached Captain Bunker the next day and demanded that Captain Bunker discipline plaintiff for the previous night's presentation. When Captain Bunker refused to discipline plaintiff unless defendant Major directed him to do so in writing, defendant Major allegedly stormed out of the room.

On January 16, 1998, plaintiff sent an e-mail to an employee in the City of Olathe's Human Resources Department regarding staffing problems and pay increases. That same day, defendant Sherman forwarded a copy of the e-mail to defendant Major with a note stating: "This is getting a little out of hand. Can we get together and discuss this. Please do not talk to the writer at this point, let's talk about it as an overall policy." Defendant Major testified in deposition that defendant Sherman was upset about plaintiff's e-mail.

In February 1998, plaintiff met with defendant Sherman to discuss his concerns that defendant Major had engaged in unethical conduct. During that meeting, plaintiff specifically raised three of the allegations contained in the "Allegations of Unethical Conduct" document that he previously drafted. Plaintiff also met with Johnson County District Attorney Paul Morrison during the same period of time to discuss issues relating to defendant Major's allegedly unethical conduct.

---

1. Plaintiff testified in deposition that he received prior permission from Captain Bunker to remove the boxes.

On February 20, 1998, defendant Major advised Major Howard Kannady, who was then the Commander of the Internal Affairs Division, that various officers had expressed concerns that plaintiff was disrupting working conditions by engaging in conversations in the Investigation Unit concerning "open and disrespectful criticism of other officers and various issues within the police department in their treatment of employees." Defendant Major directed Major Kannady to conduct an initial investigation of the complaints. Major Kannady completed the initial investigation after interviewing six officers from February 23 to 26, 1998.

Defendant Major reviewed the transcripts of the six initial interviews conducted by Major Kannady. Defendant Major's review of the initial transcripts revealed that he had been the subject of plaintiff's allegedly open and disrespectful criticism. On March 2, 1998, defendant Major ordered a formal Internal Affairs investigation of plaintiff. Plaintiff was placed on administrative leave with pay pending the outcome of the investigation, which involved approximately thirty interviews with various officers of the Olathe Police Department.

Following the completion of the formal Internal Affairs interviews, defendant Sherman reviewed the full investigation file and determined that plaintiff had violated multiple sections of the Olathe Police Department Rules and Regulations. Defendant Sherman delivered a memorandum to plaintiff on May 15, 1998, informing him of her determination and imposing discipline of suspension without pay for two pay periods, as well as probation for a term of one year.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to

the nonmoving party." *Black Hills Aviation, Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

## III. DISCUSSION

Defendants advance several arguments in support of their motion for summary judgment. First, defendants contend that plaintiff cannot satisfy the requisite elements to recover pursuant to section 1983 for deprivation of his First Amendment rights to freedom of speech and freedom of association. Second, defendants Major and Sherman argue that they are entitled to qualified immunity. Third, defendants Major and Sherman contend that they are not liable for punitive damages. Fourth, defendants claim that damages caps contained in the Kansas Tort Claims Act limit plaintiff's ability to recover damages in this case. Finally, defendants Major and Sherman argue that plaintiff's official capacity claims against them should be dismissed because the claims are duplicative of plaintiff's claims against the City of Olathe.

A. First Amendment Retaliation Claims

■ It is "axiomatic that a governmental entity cannot condition employment 'on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Schalk v. Gallemore,* 906 F.2d 491, 494 (10th Cir.1990) (quoting *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Accordingly, a government employer cannot retaliate against an employee for exercising his or her First Amendment rights. *Dill v. City of Edmond,* 155 F.3d 1193, 1201 (10th Cir. 1998) (citing *Connick,* 461 U.S. at 146–47, 103 S.Ct. 1684).

■ The court applies a four-part test in evaluating plaintiff's First Amendment retaliation claims. *Finn v. New Mexico,* 249 F.3d 1241, 1247 (10th Cir.2001). First, the court must determine whether plaintiff's speech and associational activities touched upon matters of public concern. *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. If so, the court must determine whether plaintiff's interest in the speech and associational activities outweighs defendants' interest in regulating the speech and associational activities to maintain an effective and efficient workplace. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).[2] If the court deter-

**2.** The court notes that there exists some dispute among the courts as to whether the Connick/Pickering analysis applies as readily to freedom of association claims as it does to freedom of speech claims. Compare, e.g., *Boals v. Gray,* 775 F.2d 686, 692 (6th Cir. 1985) (applying Connick/Pickering analysis to freedom of association claim), with *Hatcher v. Bd. of Pub. Educ. & Orphanage,* 809 F.2d 1546, 1558 (11th Cir.1987) (declining to apply Connick/Pickering analysis to freedom of association claim). See also *Balton v. City of Milwaukee,* 133 F.3d 1036, 1041 (7th Cir. 1998) (Cudahy, J., concurring) (noting that applicability of Connick/Pickering analysis may depend on whether the claim is one of "pure" freedom of association or "hybrid" freedom of association and freedom of speech). Although the Tenth Circuit has not expressly decided the issue, it has indicated that the public concern prong of the Con-

nick/Pickering analysis "may be an inapt tool of analysis" in some freedom of association cases. *Schalk,* 906 F.2d at 498 n. 6. In Schalk, the court collapsed plaintiff's freedom of association claim into her freedom of speech claim because it found that the only "association" plaintiff sought was the audience for her speech. *Id.* at 498. In dicta, the court noted that, although the facts of the case warranted the application of the public concern analysis to plaintiff's hybrid freedom of speech/freedom of association claim, other pure associational claims, such as those of a school teacher fired for being married, might not be suitable for a public concern analysis. *Id.* at 498 n. 6. In this case, plaintiff's freedom of speech and freedom of association claims, though not identical as in Schalk, are closely related. As a result, the court finds that the application of the public concern test to plain-

mines that plaintiff's interest in the speech and associational activities outweighs defendants' interest, then plaintiff bears the burden to show that the speech and associational activities were substantial or motivating factors in the challenged actions taken against him. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Finally, if plaintiff shows that the speech and associational activities were substantial or motivating factors in the actions taken against him, then defendants may avoid liability by demonstrating that they would have taken the same actions against plaintiff regardless of his expression of the protected speech or his associational activities. *Id.* The first two steps are legal questions and are for the court to determine whether the speech and associational activities are constitutionally protected; the second two steps concern causation and are questions of fact. *Dill,* 155 F.3d at 1202 (citing *Gardetto v. Mason,* 100 F.3d 803, 811 (10th Cir.1996)).

In this case, plaintiff contends that defendants retaliated against him for exercising his First Amendment rights to freedom of speech and freedom of association. Specifically, plaintiff maintains that defendants' decisions to order an Internal Affairs investigation on him, to place him on administrative leave for nearly twelve weeks, and to impose a disciplinary suspension and probationary period on him were in retaliation for his contacts with and presentations to the Olathe City Council, his preparation of the document entitled "Allegations of Unethical Conduct," his discussions with defendant Sherman and District Attorney Morrison about defendant Major's allegedly unethical conduct, and his association with the FOP to advance common concerns about officer pay, staffing and morale.

*1. "Public Concern" Analysis*

 The initial inquiry in the court's four-step analysis is whether plaintiff's speech and associational activities touched upon matters of public concern. See *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Finn,* 249 F.3d at 1247 (quoting *Connick,* 461 U.S. at 146, 103 S.Ct. 1684). Disclosure of "evidence of corruption, impropriety, or other malfeasance on the part of city officials ... clearly concerns matters of public import." *Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir.1988) (citations omitted). In addition, "[s]peech that calls attention to a government's failure to discharge its governmental duties generally constitutes a matter of public concern." *Lee v. Nicholl,* 197 F.3d 1291, 1295 (10th Cir.1999) (citation omitted). Whether a matter of public concern is addressed will depend on the "content, form and context" of the expression, as revealed by the entire record. *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684.

Defendants advance three arguments in support of their contention that plaintiff's speech and associational activities, or parts thereof, do not satisfy the public concern test. First, defendants argue that plaintiff's speech was motivated by personal, as opposed to public, concern and is therefore unprotected. However, in a Memorandum and Order dated May 31, 2000 (Doc. 84), the court previously concluded that plaintiff's speech concerned important community issues and therefore addressed matters of public concern. See *Beach v. City of Olathe,* 97 F.Supp.2d 1065, 1069 (D.Kan. 2000). As a result, the court will not revisit the issue in detail here, but simply holds once more that plaintiff's speech satisfies the public concern requirement.

tiff's freedom of association claim would not be inappropriate in this case.

Second, defendants contend that plaintiff's preparation of the document entitled "Allegations of Unethical Conduct" and his subsequent discussion of portions of that document with defendant Sherman constitute unprotected speech because plaintiff spoke with reckless indifference to the truth or falsity of the allegations contained within the document. The court disagrees. Defendants correctly note that the court "may assume that deliberately or recklessly false statements by public employees are either unprotected by the First Amendment or, at least, that such intentional falsity would weigh heavily against protection." *Moore v. City of Wynnewood*, 57 F.3d 924, 933 (10th Cir. 1995) (citing *Pickering*, 391 U.S. at 574, 88 S.Ct. 1731; *Wulf v. City of Wichita*, 883 F.2d 842, 858 & n. 24 (10th Cir.1989)). However, in this case, defendants have not shown the absence of a genuine issue of fact as to whether plaintiff's statements with respect to the "Allegations of Unethical Conduct" were actually false, or whether plaintiff made them knowing they were false or with reckless disregard for their veracity. Rather, the evidence reveals a dispute between plaintiff and defendant Major as to the veracity of the document as a whole and a dispute between plaintiff and Detective Morgan as to the veracity of one particular allegation. In addition, the evidence demonstrates that even if plaintiff did not necessarily have first-hand knowledge of many of the allegations contained in the document, he attempted to verify their accuracy by speaking with other police officers about them. Plaintiff's attempts to verify his suspicions about the allegations, coupled with defendants' failure to present the absence of a genuine issue of fact as to the veracity of the allegations, convinces the court that plaintiff's preparation and subsequent discussion of the "Allegations of Unethical Conduct" must remain under the protection of the First Amendment as speech that touched on matters of public concern. See *Wulf*, 883 F.2d at 859 (finding First Amendment protection for allegations made by a police officer about a superior officer when the police officer based the allegations on conversations with other officers and the allegations were comprised of suspicions the police officer wanted investigated).

Third, defendants claim that plaintiff's associational activities with the FOP are unprotected because plaintiff's speech was motivated by personal interest as opposed to his association with the FOP. The court disagrees. According to the United States Supreme Court, individuals have "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Here, plaintiff associated with the FOP to advance his and the FOP's mutual concerns to the Olathe City Council about officer pay, staffing and morale. In other words, plaintiff associated with the FOP to engage in an activity protected by the First Amendment—speech. Because the court has already determined that plaintiff's speech satisfied the public concern requirement, the court likewise holds that plaintiff's associational activities with the FOP, which involved some of the same speech, meets the public concern requirement as well.

### 2. Pickering Balancing Test

Having concluded that plaintiff engaged in speech and associational activities that touched upon matters of public concern, the court now must determine whether plaintiff's interest in the speech and associational activities outweighs defendants' interest in regulating the speech to maintain an effective and efficient work-

ing environment. See *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. "Pertinent considerations include 'the manner, time, and place of the employee's expression ... the context in which the dispute arose ... [and] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Patrick v. Miller*, 953 F.2d 1240, 1248 (10th Cir.1992) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)).

■ Defendants argue that the Pickering balancing test tips in their favor because plaintiff neglected his duties by spending a substantial amount of on-duty time contacting Olathe City Council members about compensation, staffing, equipment, facilities and morale and by drafting the document entitled "Allegations of Unethical Conduct" during on-duty time. Defendants also argue that they are entitled to greater deference from the court because a police department has a heightened interest in maintaining discipline and harmony among its employees.

Defendants do not dispute that the speech and associational activities that plaintiff engaged in during off-duty time constitute protected speech and activities under the Pickering balancing test. This admission alone prohibits the court from granting summary judgment to defendants based on the Pickering balancing test, because defendants cannot show why plaintiff's off-duty speech and associational activities were subject to their regulation. However, even if the court examines plain-

tiff's on-duty speech and activities independently from his off-duty speech and activities, it does not conclude that plaintiff's interest in engaging in the on-duty speech and activities is outweighed by defendants' interest in regulating the speech and activities. Specifically, although plaintiff admits to engaging in some speech and activities while on-duty, there is substantial dispute as to the amount of time he spent doing so. There is also considerable dispute as to whether plaintiff's speech and activities impeded plaintiff's performance or disrupted the workplace. Weighing the evidence in the light most favorable to plaintiff, the court must conclude that the amount of on-duty time spent by plaintiff engaging in speech and activities was not substantial and that any impediment to his duties or disruption to the workplace was minimal. Given this, while still recognizing defendants' argument that a police department is generally entitled to deference because of its heightened interest in maintaining discipline and harmony among its employees, see *Wulf*, 883 F.2d at 861 (citations omitted), the court concludes that plaintiff's interest in engaging in his speech and associational activities, whether on-duty or off-duty, outweighs defendants' interest in regulating the speech and activities.[3]

### 3. Substantial or Motivating Factor Analysis

■ Having concluded that plaintiff's speech and associational activities were constitutionally protected, the court addresses whether the speech and associational activities were substantial or motivating factors in defendants' adverse actions against plaintiff. See *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568.

---

**3.** The court notes plaintiff's request to submit to the jury, via special interrogatories, issues of fact underlying the Pickering balancing test in the event that this case goes to trial. However, because the balancing test presents a question of law for the court, *Dill*, 155 F.3d at 1202 (citing *Gardetto*, 100 F.3d at 811), submission of special interrogatories may not be necessary, and the court reserves its decision on the request for another day.

As noted, the "substantial or motivating factor analysis" concerns causation and presents a question of fact. *Dill*, 155 F.3d at 1202 (citing *Gardetto*, 100 F.3d at 811). After a review of the record, the court concludes that genuine issues of material fact exist as to defendants' motivations in taking the adverse actions against plaintiff in this case. Accordingly, the court denies summary judgment on that basis.

### 4. Same Action Defense

■ Even if plaintiff shows that his speech and associational activities were substantial or motivating factors in the actions taken against him, defendants argue that they may avoid liability by demonstrating that they would have taken the same actions against plaintiff regardless of his expression of the protected speech or his associational activities. See *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568. Again, the "same action defense" concerns causation and presents a question of fact. *Dill*, 155 F.3d at 1202 (citing *Gardetto*, 100 F.3d at 811). After a review of the record, the court concludes that genuine issues of material fact exist as to whether defendants would have taken the same actions against plaintiff regardless of his expression of the protected speech or his associational activities. Accordingly, the court denies summary judgment on that basis.

### B. Qualified Immunity

Defendants Major and Sherman maintain that, regardless of whether plaintiff has sufficiently alleged a violation of his First Amendment rights to freedom of speech and freedom of association, they are entitled to qualified immunity in this case. The court disagrees.

■ Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir.1999). To determine whether a government official is entitled to qualified immunity, the court must first assess whether the plaintiff has " 'asserted a violation of a constitutional right at all,' " *Moore*, 57 F.3d at 931 (quoting *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)), and then evaluate whether those properly asserted rights were clearly established such that a reasonable person in the official's position would have known that his or her conduct violated that right, *id.*; *Merkel v. Leavenworth County Emergency Med. Servs.*, No. 98–2335–JWL, 2000 WL 127266, at *10 (D.Kan. Jan.4, 2000).

■ In this case, the court has already concluded that plaintiff has asserted a violation of his First Amendment rights to freedom of speech and freedom of association. The court also concludes that the speech and activities engaged in by plaintiff were clearly established as protected under the First Amendment at the time defendants took action against plaintiff in this case. For these reasons, the court denies summary judgment to defendants Major and Sherman based on the defense of qualified immunity.

### C. Punitive Damages

Defendants Major and Sherman also argue that plaintiff has produced insufficient evidence to support his claims for punitive damages against them. The court disagrees.

■ "[P]unitive damages are appropriate in a section 1983 case 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to

the federally protected rights of others.' " *Wulf,* 883 F.2d at 867 (citing *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)) (further citations omitted). The court must focus on whether defendants' conduct demands deterrence and punishment beyond that offered by compensatory damages. *Jolivet v. Deland,* 966 F.2d 573, 577 (10th Cir.1992) (quoting *Smith,* 461 U.S. at 54, 103 S.Ct. 1625). "[A]n award of punitive damages requires an assessment of [defendants'] subjective state of mind." *Wulf,* 883 F.2d at 867.

The record in this case indicates that genuine issues of material fact exist as to whether defendants Major and Sherman acted with the requisite intent or indifference sufficient to justify an award of punitive damages. Most notably, there is evidence that defendant Major expressed an explicit desire on at least two occasions to discipline plaintiff for his protected activities and that defendant Sherman once described plaintiff's activities as "getting out of hand." These actions alone are sufficient to create a genuine issue of material fact with respect to defendants Major's and Sherman's subjective intent or indifference in this case. Accordingly, the court denies summary judgment to defendants Major and Sherman on plaintiff's claims for punitive damages.

D. Kansas Tort Claims Damages Caps

Defendants claim that damages caps contained in the Kansas Tort Claims Act, K.S.A. § 75–6105 and K.S.A. § 60–19a02, limit plaintiff's ability to recover damages in this case. The court disagrees.

As an initial matter, the Tenth Circuit has noted the United States Supreme Court's trend of developing a federal common law of remedies—as opposed to borrowing from state law remedies—for section 1983 violations. See *Berry v. City of Muskogee,* 900 F.2d 1489, 1506 (10th Cir.1990). More importantly, judges of the District of Kansas have already expressly rejected the use of the Kansas Tort Claims Act to limit damages in a section 1983 action. See *Lee v. Wyandotte County,* 586 F.Supp. 236, 239 (D.Kan.1984) (citations omitted); see also *Scheideman v. Shawnee County Bd. of County Comm'rs,* 895 F.Supp. 279, 282 (D.Kan.1995) (citing *Lee,* 586 F.Supp. at 239) ("It is well-established that federal civil rights claims are not subject to the Kansas Tort Claims Act."). Accordingly, the court denies summary judgment to defendants on their request to apply the Kansas Tort Claims Act damages caps to plaintiff's claims.

E. Dismissal of Official Capacity Claims Against Defendants Major and Sherman

Finally, defendants Major and Sherman argue that plaintiff's official capacity claims against them should be dismissed because the claims are duplicative of plaintiff's claims against the City of Olathe. Plaintiff concedes to the accuracy of defendants' argument in his response brief. Accordingly, the court grants defendants' motion for summary judgment with respect to the dismissal of the official capacity claims against defendants Major and Sherman.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 183) is granted in part and denied in part.

IT IS FURTHER ORDERED that the official capacity claims against defendants Major and Sherman are dismissed.

Copies of this order shall be transmitted to counsel of record for the parties.

**IT IS SO ORDERED.**