Vicky L. GETZ, Plaintiff,

v.

The BOARD OF COUNTY COMMIS-SIONERS OF THE COUNTY OF SHAWNEE, KANSAS; and Barbara Fisher and Theresa Schwartz, in their individual capacities and as employees of Shawnee County, Kansas, Defendants.

Civil Action No. 01–2116–KHV.

United States District Court, D. Kansas.

March 8, 2002.

Ira Dennis Hawver, Ozawkie, KS, for Plaintiff.

Richard V. Eckert, Jonathan C. Brzon, Office of Shawnee County Counselor, Topeka, KS, Ron D. Martinek, Parker & Hay, LLP, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff alleges that defendants terminated her employment at the Shawnee County jail because she reported nursing practice violations there. The matter is before the Court on Defendants' Motion For Summary Judgment (Doc. # 24) filed December 3, 2001. For reasons stated below, the Court sustains defendants' motion in part.

### Factual Background

The following facts are either undisputed or, where disputed, construed in the light most favorable to plaintiff.[1]

1. Defendants object to many of plaintiff's responses to their statement of facts, claiming that they rely on exhibits which contain inadmissible hearsay or lack evidentiary foundation or support and should therefore be disregarded. Under D. Kan. Rule 56.1(d), "[a]ll facts on which a motion or opposition is based shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admission." Defendants, however, also rely on materials which are not properly authenticated under this rule. Defendants apparently believe that they have complied with the rule by labeling several of their exhibits as deposition exhibits. But they do not provide citations to the relevant portions of the deposition testimony that authenticates the exhibits or an affidavit which declares the exhibits to be true and accurate copies. The Court will disregard those summary judgment exhibits which the parties have failed to properly authenticate. In defendants' exhibits, the Court will disregard Getz Letter To Terri Roberts (Exhibit 5), Inmate Medical Record Logs (Exhibits 6–10) and Nurses Meeting Agenda (Exhibit 11), all in Defendants' Exhibits Submitted In Support Of Defendants' Motion For Summary Judgment ("Defendants' Exhibits") (Doc. # 26) filed December 3, 2001. As stated above, merely identifying these exhibits as deposition exhibits is insufficient to comply with the local rules. The Court will take judicial notice of the Pretrial Order (Exhibit 1), and consider the Getz Deposition (Exhibit 2), Affidavit Of Theresa Schwartz (Exhibit 3), Affidavit Of Barbara Fisher (Exhibit 4), Plaintiff's Answers To Defendants' First Set Of Interrogatories (Exhibit 12), Affidavit Of Jane Underwood (Exhibit 13) and Affidavit Of Karen Kederich (Exhibit 14), all in Defendants' Exhibits (Doc. # 26). In plaintiff's exhibits, the Court will disregard the first 20 exhibits. The Court will consider Declaration Of Terri Roberts, JD, RN (Exhibit 21), Affidavit Of Vicky L. Getz, RN (Exhibit 22) and the eight exhibits which are referred to and attached to plaintiff's affidavit, all in Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment ("Plaintiff's Memorandum") (Doc. # 31) filed December 23, 2001. In defendants' reply exhibits, the Court will disregard Getz Letter To The Kansas Human Rights Commission (Exhibit 15) in Defendants' Reply To Plaintiff's Memorandum In Opposition to Defendants' Motion For Summary Judgment ("Defendants' Reply") (Doc. # 32) filed January 4, 2002.

Defendants also argue that plaintiff's affidavit should be stricken for failure to comply with Fed.R.Civ.P. 56(e), which states that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Defendants contend that plaintiff's affidavit is "replete with generalized, unsubstantiated allegations." *Id.* at 22. While plaintiff's affidavit is clearly slanted to her perspective, she does specifically allege the factual bases for her statements. The Court will not strike plaintiff's affidavit merely because it states the facts from her point of view. These are not conclusory allegations based on conjecture. See *Bash v. City of Galena, Kan.*, 42 F.Supp.2d 1171, 1185 (D.Kan.1999) (conclusory allegation that age

Plaintiff is a registered nurse ("RN"). On April 17, 2000, the Shawnee County Health Department ("Health Department") hired plaintiff to provide nursing services at the jail which the Shawnee County Department of Corrections operated in Topeka, Kansas. Some three months later, on July 28, 2000, the Health Department terminated plaintiff's employment. While employed, plaintiff was an at-will employee within a 120 day probationary period defined in the County policy handbook. Section 6.1 of the Shawnee County Personnel Rules and Regulations states that "the probationary period shall be considered as a working tests [sic] of the employee's ability to perform adequately in the position to which he/she is appointed."[2] Section 6.3 of the Shawnee County Personnel Rules and Regulations states:

> Prior to the expiration of an employee's original or extended probationary period, the appointing authority shall notify the employee and the Director of Human Resources that the employee will be dismissed for [sic] demoted, or that the probationary period has been extended, or that the employee has been given permanent status. Prior to any action, a performance evaluation shall be made.

During her employment, plaintiff's superiors included Barbara Fisher, medical staff member and Nursing Team Leader of the Department of Corrections, and Theresa Schwartz, medical staff member and manager of Adult Field Services for Shawnee County. One of plaintiff's co-workers was Jan Petit, a medical staff member and licensed practical nurse ("LPN") for Shawnee County. At all relevant times, Fisher, Schwartz and Petit acted within the scope of their authority as employees of Shawnee County.

Defendants hired plaintiff for the evening shift but started her on the day shift for a two week orientation. Plaintiff's orientation consisted of a 30–minute medication dispensing tour with Petit and a 15–minute orientation with Jane Underwood, who showed plaintiff where medication was stored. Plaintiff believed that an LPN could train a RN but, because LPNs can only practice nursing under the supervision of a doctor, dentist or RN, plaintiff objected to being supervised by an LPN. See Getz Deposition (Exhibit 22) in Plaintiff's Response (Doc. # 31) at ¶ 10 (citing K.S.A. § 65–1113). Petit and Underwood told Fisher that they were having difficulty orienting plaintiff and that she would not follow directions and was not receptive to jail procedures. Both Petit and Underwood indicated an unwillingness to work with plaintiff because of her uncooperative demeanor.

Plaintiff's orientation period ended early because she balked at accepting substandard nursing procedure instructions in order to fit in with the nursing staff. Jail nurses were brusque and unfriendly to plaintiff because she did not accept substandard nursing procedures. When plaintiff began working on the night shift, she contacted Fisher and advised her that the job was not really a match for her and that Petit and Underwood were the most disgusting, nonprofessional nurses with whom she had ever worked. Plaintiff did not have to work the night shift with Petit, but she went to work 30 minutes early to receive verbal nursing reports from her because Petit did not put reports in writing.

---

may have caused termination insufficient to carry plaintiff's burden of creating a genuine issue of material fact).

2. Plaintiff does not include a copy of the pertinent portion of the personnel handbook. Defendants, however, do not contend that her quotations of the handbook are inaccurate.

Before and throughout plaintiff's employment, the nursing staff crushed medications that were given to inmates.[3] A nurse had previously questioned the lack of a written policy regarding crushing of medications [4] and Schwartz and Fisher had met to draft protocols on the issue.[5] During plaintiff's employment, however, she did not see any evidence that Fisher had written a protocol on crushing of medication. Plaintiff was aware of the unwritten policy, however, and she disagreed with it on professional grounds. Fisher told plaintiff that she had already been presented with information about the hazards of crushing certain medications and that they were not going to discontinue crushing medication at that time. Plaintiff spoke with Schwartz about the medication crushing policy and nursing protocols and Schwartz advised plaintiff that the process of reviewing those issues had already started.[6]

In early July, plaintiff told Fisher that she and Petit were beginning to have some real issues. On July 12, 2000, plaintiff met with Fisher, Schwartz and Petit to discuss her concerns about the nursing staff and Petit's lack of professionalism. Plaintiff did not send written documentation of her concerns to Schwartz or Tom Merkel, but she did document concerns about Petit's lack of communication and competence to Fisher and Sgt. Charles Walker of the Department of Corrections.[7] Plaintiff did not discuss her concerns with Dr. Norris, the medical director of the jail, because she did not want to cause "bad air" and "unfriendliness, total unprofessionalism, [and a] marked angry atmosphere" be-

3. On July 29, 1992, eight years before plaintiff went to work for defendants, Fisher sent an email which stated that Dr. Horne, the jail psychiatrist, wanted medications to be crushed to keep inmates from hoarding them for suicide purposes. Plaintiff was unaware of any such protocol signed by Dr. Norris, the jail's medical director when plaintiff worked there.

4. In February 2000, Rex Patty, a registered nurse with Shawnee County, submitted a memo to Fisher which sought a written policy about crushing medication. On March 6, 2000, Patty also submitted a memo to Schwartz on the subject.

5. Plaintiff denies that Schwartz told her that the process had been started. The portion of her deposition testimony that she cites in support of the denial, however, does not address this comment. The Court therefore deems this fact admitted. See D. Kan. Rule 56.1(a) ("all material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."); see also *Thompson v. City of Lawrence*, Kan., 1994 WL 262598, at *2 (D.Kan. May 19, 1994) (plaintiffs who purported to controvert moving party's statements of undisputed facts but failed to cite record support failed to establish genuine is-

sue of material fact under predecessor to D. Kan. Rule 56.1). On March 3 or 7, 2000, Schwartz met with Fisher to address the issue. See Memorandum In Support Of Defendants' Motion For Summary Judgment ("Defendants' Support Memorandum") (Doc. # 25) filed December 3, 2001 at 5 (meeting took place March 3) and Affidavit Of Teresa Schwartz (Exhibit 3) in Defendants' Exhibits (Doc. # 26) at ¶ 5 (meeting took place March 7). Schwartz directed Fisher to draft protocols on crushing, discontinuing or holding medications. The difference is immaterial but for purposes of this order, the Court will utilize the date in the affidavit.

On March 13, 2000, Schwartz sent a memo to Fisher and the jail doctors, summarizing a meeting which had been held on March 10, 2000. The memo addressed discussions and a preliminary plan for medical/nursing protocols, crushing medications, refusal of medications by inmates, discontinuing or holding medication, and the psychiatric clinic.

6. Plaintiff is not aware of any doctor who believes that inmates suffered adverse effects because their medications were being crushed.

7. The parties do not identify Merkel and Walker or what positions they held.

tween her and Petit. Getz Deposition (Exhibit 2) in Defendants' Exhibits at 59:16–19. Plaintiff claims that Petit habitually violated nursing regulations by dispensing medication without a physician's orders or in an untimely fashion.

As an example of the latter practice, i.e. dispensing medication in an untimely manner, plaintiff cited Petit's practice of giving sleep medication too early in the day so that when an inmate attended therapy meetings he was not wholly alert. Plaintiff claims that timing of medication was an issue for various inmates, including Robert Barnes, John Bradshaw, Jack Gleason, Daniel Gonzales, Duane Jimerson, Kevin Mitchell, Rico Richardson and Jack Ross. As an example of the former practice, plaintiff states that Petit discontinued a patient's medication on July 2 and started him on another medication without a doctor's authorization. On July 3, Petit switched the patient back to the earlier medication. Plaintiff admits that Dr. Horne, a jail psychiatrist, signed off on the medication change at some point, and that it would be reasonable for Petit to rely on Dr. Horne's signature in changing an inmate's medication. The incident concerned plaintiff, however, because it showed both communication problems (Petit had not issued a nursing report regarding the medication change and the doctor's medication record did not order her to stop the old medication and start the new one) and also a bad health issue for the inmate. Plaintiff believed that this was bad protocol in nursing practice. Plaintiff also recalled that after the medication change, the inmate suffered an inability to sleep, ringing in his ears and increased psychosis in the form of voices.[8]

Plaintiff also claims that Petit habitually engaged in bad nursing practices by denying inmates their medication or treatment. As an example of denial of medication, plaintiff cites the case of inmate John Hedrick, who arrived at the jail on July 17, 2000 and brought six medications with him. The medications, which were all 30 day supplies that had been filled between May 25 and May 30, 2000, were more than 30–days old and thus were not current. Initially, Petit decided to withhold Hedrick's medication because the dates on the bottles were not current. Plaintiff knows that current medication dates can be a concern, but she believed that it was unreasonable to rely on medication bottle dates because inmates could use old bottles for new medicines. On July 23, 2000, Petit and plaintiff had a conversation in which Petit determined that they should wait to dispense the medication until Dr. Horne reviewed the situation. Plaintiff believes that Petit's stated concerns about the medication dates were a pretext for her decision to either harm Hedrick or not put forth the effort to give him the proper medication. Plaintiff, however, did not make any notations that Hedrick suffered adverse effects for lack of medication. As examples of denial of treatment, plaintiff cites inmate Chris Hodges, who did not receive treatment for an open head wound, and inmate Earnest Taylor, who did not receive proper antibiotic treatment.

Plaintiff also alleges that nursing procedures caused inmates to refuse medication because it was not consistently the same color from day to day. Specifically, inmates Steve Lake and Patrick Deal told plaintiff that they did not want to take further medication since, because the medications were crushed, the color changed

---

8. In her deposition, plaintiff initially stated that she could not recall any adverse effects that the inmate suffered. See Getz Deposition (Exhibit 2) in Defendants' Exhibits (Doc. # 26) at 110:6–14. On further questioning, plaintiff recalled these adverse side effects.

from day to day and they could not verify that they were getting the correct medications.

As another instance of disregard for the well-being of inmates, plaintiff cites an incident on July 17, 2000, when inmate Robert Ladwig intentionally re-opened a wound, ruptured an artery and pumped blood on the walls and floor of his cell. Plaintiff believed that the jail did not have the ability to deal with Ladwig's wound or psychosis, and she ordered that an ambulance take him to a hospital. After the ambulance arrived, Fisher went to Ladwig's cell and said that she would have dealt with the situation by applying a pressure dressing and handcuffing Ladwig to a chair. Fisher told plaintiff that using an ambulance for a non-life-threatening emergency would cost the County. Plaintiff was not argumentative with Fisher, but Fisher perceived her reaction as insubordination.[9]

Plaintiff also believed that inmate Ernest Ray Paige successfully committed suicide on account of the insufficient number of nurses at the jail. At one point, plaintiff worked ten straight days as the only nurse on the evening shift for both the adult and juvenile detention facilities—a population of more than 400 inmates. Correctional officers (not nurses) are responsible for monitoring inmates on suicide watch, however, and plaintiff acknowledges that it is speculation to assume that more nurses would mean that someone would have responded to Paige's suicide more quickly.

Between June 2000 and July 14, 2000, plaintiff contacted Terri Roberts of the Kansas State Nurses Association ("KSNA") at least once to discuss her concerns about nurses at the jail.[10] Before July 26, 2000, plaintiff informed Schwartz that she had filed a complaint with Roberts.[11] On July 26, 2000, plaintiff met with Schwartz and again told her that she had

---

**9.** Plaintiff contends that Fisher never counseled her about this incident (or any other). The uncontroverted evidence shows, however, that although plaintiff apparently did not consider it formal counseling, she and Fisher had some sort of verbal exchange in Ladwig's cell.

**10.** As discussed in Note 11, the record is unclear as to exactly when or how many times plaintiff and Roberts spoke.

**11.** Plaintiff's affidavit claims that before July 26, 2000, she informed Schwartz that she had officially complained to Roberts. Defendants contend that this affidavit is an attempt to create a sham factual issue which contradicts plaintiff's sworn deposition testimony and pleadings. The Court will disregard declarations which are inconsistent with prior sworn testimony if the changes attempt to create a sham fact issue. See *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986). "[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting [her] own prior testimony." *Id.* Prior discovery responses made under oath are essentially prior sworn testimony and should be analyzed in the same manner as prior deposition testimony. See, e.g., *Dono-*

*hoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1136 n. 4 (7th Cir.1992); *Reisner v. Gen. Motors Corp.*, 671 F.2d 91, 93 (2d Cir.1982). The factors relevant to the existence of a sham fact issue include "whether the affiant was cross-examined during [her] earlier testimony, whether the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Erasmus v. Wal–Mart Stores, Inc.*, 2002 WL 12261, (10th Cir.2002) (quoting *Franks*, 796 F.2d at 1237).

At her deposition, plaintiff testified that she spoke with Roberts on July 14. Defendants contend that plaintiff did not have any conversations with Schwartz between July 14 and July 26, so her sworn affidavit must be false in swearing that before July 26 she informed Schwartz that she had made a complaint to Roberts. The Court notes, however, that Roberts has sworn that her first conversation with plaintiff occurred in June 2000. See Declaration Of Terri Roberts, J.D., R.N, in Plaintiff's Response (Doc. # 31). Defendants present no evidence which suggests that Roberts' affidavit is false. It is possible that after the initial conversation, plaintiff decided

officially complained to Roberts about standard operating procedures at the jail which violated acceptable nursing practice. After plaintiff told Schwartz that she had complained to Roberts, Fisher began excluding her from staff meetings.

On July 28, 2000, two days after plaintiff's meeting with Schwartz, Fisher terminated plaintiff's employment. The stated reason for termination was plaintiff's inability to get along with co-employees and resistance to counseling by her supervisor. Plaintiff was never informed that her work was unsatisfactory, however, and any failure to get along with fellow employees stemmed from her resistance to giving inmates substandard nursing care.

On August 2, 2000, five days after her employment was terminated, plaintiff sent a letter to Roberts which reported a substandard quality of care by Fisher. Plaintiff did not speak with jail physicians about her concerns regarding timing of medications given to inmates.

From November 2000 to March 2001, plaintiff was employed by Prison Health Systems ("PHS"). Plaintiff left PHS because they closed her position. She does not believe that she was fired.

Since defendant terminated her employment, plaintiff has not sought or received any treatment or counseling for psychiatric or emotional problems.

Plaintiff asserts the following claims: (1) violation of First Amendment free speech rights under 42 U.S.C. § 1983; (2) violation of Due Process rights under the Fourteenth Amendment and Section 1983; and (3) retaliatory termination for whistleblowing in violation of the Kansas Whistleblower Act, K.S.A. § 75–2973.[12] See Pretrial Order (Doc. # 22) filed November 27,

to file a written complaint with Roberts, or that plaintiff believed that her initial informal conversation constituted an official complaint.

In addition, it is possible that plaintiff informed Schwartz through a message or note and not an in-person conversation. While plaintiff swears that she informed Schwartz of her complaint before July 26, she does not indicate how she did so. Plaintiff's deposition testimony indicates that she made numerous attempts to talk with Schwartz between June 30 and July 26, including briefly speaking with Schwartz on the phone on July 3, leaving documentation of her concerns with Schwartz's secretary on July 3 and meeting with Schwartz on July 12. See Getz Deposition (Exhibit 16) in Defendants' Reply (Doc. # 32) at 165–67. Although plaintiff was unsure when some of these exchanges took place (at one point in her deposition she testified that she did not believe she connected with Schwartz until July 26, see *id.* at 152), the record indicates a number of opportunities where she could have informed Schwartz of her complaint. The portions of plaintiff's deposition on which defendants rely do not reveal direct contradictions of plaintiff's affidavit. Ultimately, plaintiff's deposition and KHRC complaint and Roberts' affidavit reveal

some confusion as to the dates on which various conversations occurred and what was said during the conversations. Plaintiff's affidavit is apparently an attempt to clear up that confusion. Based on this record, the trier of fact is best able to determine whether prior to July 26 plaintiff informed Schwartz that she had spoken to Roberts.

Defendants contend that plaintiff has not documented the fact that she made an "official complaint" to Roberts before July 26. Plaintiff did document her complaint to Roberts in a August 2, 2000 letter and Roberts has submitted a sworn declaration that she spoke with plaintiff before her termination and took down plaintiff's concerns at that time. This sworn declaration is sufficient to support plaintiff's contention and the jury will decide whether to believe plaintiff and Roberts or defendants.

12. In the Pretrial Order (Doc. # 22) filed November 27, 2001, plaintiff also asserted the following claims: (1) conspiracy to violate her civil rights under 42 U.S.C. § 1985(2); (2) intentional infliction of emotional distress; and (3) defamation. In her response to defendants' summary judgment motion, she has agreed to dismiss these claims and her claims against Petit.

2001. Defendants contend that they are entitled to summary judgment on these claims because (1) plaintiff's speech was not constitutionally protected and, even if it was protected, her interest in free speech was outweighed by the County's interest in maintaining a safe and effective workplace; (2) as a probationary employee, plaintiff did not have Fourteenth Amendment rights to Due Process; and (3) plaintiff is not protected by the Kansas Whistleblower Act because she was a probationary county employee.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc.*

*v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. See *Applied Genetics*, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. See *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. See *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Analysis

### I. First Amendment Claim

Plaintiff asserts that defendants violated her First Amendment right to free speech by terminating her employment because she had voiced concerns to Roberts about alleged violations of state and federal law that compromised the safety, health and welfare of the inmates who received medical care in the Shawnee County jail.[13] De-

---

**13.** The Complaint (Doc. # 1) and Pretrial Order (Doc. # 22) are less than clear as to whether plaintiff claims that her speech to Petit, Fisher, Schwartz or Roberts is constitu-

tionally protected. In her response to defendants' motion, plaintiff argues that by officially stating her concerns to Roberts, she was voicing a matter of public concern. See

fendants contend that plaintiff's speech was not constitutionally protected and that, even if it was protected, the County's interest in maintaining an efficient and effective workplace outweighed plaintiff's right to voice her concerns.

■■■ When a government employer has allegedly taken adverse action because of an employee's exercise of her right of free speech, the Court applies the *Pickering/Connick* balancing test. See *Kent v. Martin,* 252 F.3d 1141, 1143 (10th Cir. 2001) (citing *Pickering v. Bd. Of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). This four-part test asks the following questions:

1. Does the speech in question involve a matter of public concern?
2. If so, does the employee's interest in the expression outweigh the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace?
3. Was the employee's speech a substantial factor driving the challenged employment action?
4. If so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech?

See *id.* (quotations and citations omitted). The first two questions are ones of law for the Court, while the final two questions are ones of fact. See *id.* (citing *Barker v. City of Del City,* 215 F.3d 1134, 1139 (10th Cir.2000)).

## A. Nature Of Plaintiff's Speech

Plaintiff asserts that her speech to Roberts was protected under the First Amendment. Defendants contend that plaintiff's speech was in the course of her duties and that she was merely sharing internal work complaints and grievances with Roberts. Defendants argue that although the speech may be of public interest, it is not of public concern and plaintiff cannot show that her speech "sufficiently informed the issue so as to be helpful to the public in evaluating the conduct of government." See Defendants' Memorandum (Doc. # 25) at 15 (quoting *Wilson v. City Of Littleton, Colo.,* 732 F.2d 765, 768 (10th Cir.1984)). Specifically, defendants contend that plaintiff did not speak to Roberts to foster an investigation into the jail's nursing department. Plaintiff contends, however, that her speech was motivated by professional concern and compliance with Kansas state regulations, and denies that it was motivated by internal complaints or personal spite.

■■■ If the Court determines that plaintiff's speech was not protected, defendants are entitled to judgment as a matter of law. See *Craven v. Univ. Of Colo. Hosp. Auth.,* 260 F.3d 1218, 1225 (10th Cir.2001). The law is well-established that all matters which transpire within a government office are not of public concern and "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.* at 1227 (quoting *Connick,* 461 U.S. at 149, 103 S.Ct. 1684) (disagreement regarding presentation of photographs to hospital managers not matter of public concern). Plaintiff need not spread her views before the public to pursue a claim for retaliatory discharge; the fundamental inquiry is whether plaintiff speaks as an employee or as a citizen. See *Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *David v. City & County of Denver,* 101 F.3d 1344, 1355 (10th Cir. 1997). Matters of public concern are those

Plaintiff's Response (Doc. # 31) at 15. The Court therefore assumes that the allegedly protected speech which is at issue in this matter is plaintiff's speech to Roberts.

which can "be fairly considered as relating to any matter of political, social, or other concern to the community." See *Finn v. New Mexico*, 249 F.3d 1241, 1247 (10th Cir.2001) (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684). Speech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests. See *id.* (quoting *Conaway*, 853 F.2d at 797). In determining whether speech is of public concern, the Court considers the "content, form, and context of a given statement, as revealed by the whole record." *Id.* (quoting *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684).

■ Plaintiff contends that her speech to Roberts, as president of the KSNA, was of public concern. According to Roberts, plaintiff told her that medications were being improperly crushed and administered, that medications were not started in a timely fashion after inmates checked into the jail, that severe understaffing resulted in an inability to maintain a proper standard of care, that nurses verbally abused inmates on the basis of their race and incarceration, and that the jail physician had not approved written nursing policies, procedures or guidelines, delegation of nursing tasks, or medication protocol for over-the-counter medication. While defendants characterize plaintiff's concerns as internal complaints about jail procedures, personal grievances with Petit or gripes which are without merit and are unsupported by the record, plaintiff's concerns arguably address the integrity and qualifications of jail nurses and the procedures which the jail utilized in providing health care to inmates. Plaintiff's speech to Roberts is aptly characterized as a matter of public concern.[14] See *Finn*, 249 F.3d at 1248 (speech on allegedly illegal nature of department reorganization, lack of integrity or qualifications and ineptitude of management, loss of funds due to poor decision-making, and impact of supervisor's alleged affair with subordinate constituted matters of public concern).

## B. Weighing Of County And Plaintiff's Interests

■ The next question is whether defendants' interest in maintaining an effi-

14. In support of their position that plaintiff's speech was not a matter of public concern, defendants cite two cases which are clearly distinguishable. In addition, neither case is binding precedent in this Court. In *Pearson v. Macon–Bibb County Hosp. Auth.*, 952 F.2d 1274 (11th Cir.1992), a senior nurse was reprimanded and ultimately terminated for failure to adequately supervise other nurses. After her reprimand, the senior nurse attended a seminar where she complained that her supervisors should have been culpable for any lapse of duty by the other nurses. She also responded to her reprimand by laying the blame on another employee. Notably, there was no evidence that the senior nurse complained about the safety and quality of patient care in the hospital. Her concerns were apparently administrative. Furthermore, there was no evidence that the senior nurse complained to an outside formal entity such as a nursing association; she complained at a seminar and to her hospital supervisors.

In *Gomez v. Tex. Dep't Of Mental Health & Mental Retardation*, 794 F.2d 1018 (5th Cir. 1986), plaintiff, who was employed at a residential treatment facility for the mentally ill, gave a copy of a memo concerning new length of stay regulations to an employee in a different facility during the course of a routine meeting. Plaintiff's probationary employment was ultimately terminated for disclosing the memo. In granting judgment as a matter of law to defendant, the district court found that plaintiff's speech was not a matter of public concern. Although the length of stay regulations were a matter of inter-agency debate, plaintiff's disclosure was intended to advise a fellow employee of a change in policy, not to start an investigation of the new policy. As with Pearson, plaintiff's speech was not made to an outside professional agency.

cient and effective workplace outweighed plaintiff's right to air her concerns. Plaintiff asserts that her speech to the appropriate state agency, to ensure that defendants complied with appropriate laws, should have assisted them in maintaining a professional and efficient workplace—and that it was not detrimental to that goal. In evaluating defendants' interest, the Court considers "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.* at 1249 (citing *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)).

■ Defendants cite plaintiff's so-called admission that her speech caused a marked angry atmosphere with bad air, unfriendliness and a total lack of professionalism. See Defendants' Memorandum (Doc. # 25) at 22. Defendants, however, cite plaintiff's deposition testimony out of context. In her deposition, plaintiff explained that she was afraid to go over Petit's head to another authority because she did not want to create a negative atmosphere, and that she therefore did not speak to a jail doctor about her concerns. Plaintiff did not admit that a negative atmosphere existed before her discussions with Roberts. Plaintiff admits that jail nurses were brusque and unfriendly because she did not accept substandard nurs-

ing procedures and that after she told Schwartz that she had complained to Roberts, Fisher began excluding her from staff meetings. Plaintiff contends, however, that she aired her concerns in the least disruptive manner by contacting the KSNA and not media outlets such as newspapers or television or radio stations. Defendants present no evidence that plaintiff was not competent to perform her duties or that plaintiff's speech was disruptive to inmate care at the jail. They rely on the fact that other employees did not enjoy working with plaintiff-evidence which does not prove that plaintiff's speech was disruptive to the workplace. See *Finn,* 249 F.3d at 1250 (absent evidence of actual disruption, defendant could not show interest in prohibiting speech). Defendants therefore have not shown that their interest in maintaining a harmonious workplace outweighed plaintiff's right to engage in protected speech.[15]

## C. Substantial Factor Analysis

■ Because plaintiff's speech was constitutionally protected, the Court addresses whether it was a substantial or motivating factor in her termination. See *Beach v. City of Olathe, Kan.,* 185 F.Supp.2d 1229, 2002 WL 193246, at *6–7 (D.Kan. Feb.1, 2002) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 at 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The substantial or motivating factor analysis concerns causation and presents a question of fact. *Id.* (citing *Dill v. City of Edmond,* 155 F.3d 1193, 1202

---

**15.** Defendants contend that they have a heightened governmental interest in maintaining harmony among employees at a jail and that the County's interest in maintaining a harmonious workplace outweighed plaintiff's purportedly protected speech. As an initial matter, although governmental entities such as police departments are generally entitled to deference because of their heightened interest in maintaining discipline and harmo-

ny among their employees, see *Wulf v. City of Wichita,* 883 F.2d 842, 860–61 (10th Cir. 1989) (citations omitted), it is unclear that a jail nursing staff is entitled to that same level of deference. Even if the Court applied a more deferential standard, defendants have produced no evidence that plaintiff's speech to Roberts caused or was likely to cause disruption among the staff, beyond causing others to dislike plaintiff.

(10th Cir.1998)). Defendants contend that plaintiff cannot show that her allegedly protected speech precipitated her termination because (1) Fisher and Schwartz did not know that plaintiff had talked with Roberts and (2) plaintiff's uncooperative attitude was the cause of her termination. Plaintiff asserts, however, that she told Fisher that she had talked with Roberts. After a review of the record, the Court concludes that a genuine issue of material fact exists as to defendants' motivations in taking adverse action against plaintiff. Accordingly, defendants are not entitled to summary judgment on this issue.

**D. Same Action Defense**

Defendants do not explicitly address the fourth step of the *Pickering/Connick* balancing test, but they allude to a claim that plaintiff's inability to get along with other employees during her probationary status justified her termination. Under the *Pickering/Connick* balancing test, even if plaintiff shows that her speech was a substantial or motivating factor in the actions taken against her, defendants may avoid liability by demonstrating that they would have taken the same actions regardless of plaintiff's protected speech. See *Beach*, 185 F.Supp.2d 1229, 2002 WL 193246, at *7 (citing *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568). The "same action defense" concerns causation and presents a question of fact. See *Dill*, 155 F.3d at 1202 (citing *Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir.1996)). After a review of the record, the Court concludes that a genuine issue of material fact exists as to whether defendants would have taken the same action regardless of plaintiff's expression of protected speech. Accordingly, defendants are not entitled to summary judgment on this basis.

**II. Fourteenth Amendment Due Process Claim**

Plaintiff contends that defendants violated her rights to due process under the Fourteenth Amendment when they terminated her without a pre-termination hearing in retaliation for exercising her First Amendment right to free speech. Defendants argue that as a probationary employee, plaintiff is not entitled to due process protection.

In order to prove a violation of procedural due process, plaintiff must show that (1) she possessed a protected property interest in continued employment such that due process protections were necessary, and (2) defendants deprived her of the appropriate level of process. See *Hatfield v. Bd. of County Comm'rs*, 52 F.3d 858, 862 (10th Cir.1995). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir.1994) (quoting *Bd. Of Regents Of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Under Kansas law, a public employee who is terminable at will does not possess a protected property interest. See *id.* at 1136 (citing *Stoldt v. City of Toronto*, 234 Kan. 957, 964–65, 678 P.2d 153, 160 (1984)). In contrast, where the employee is terminable only for cause, the Kansas Supreme Court recognizes that the employee has a property interest in continued employment under state law. See *Farthing*, 39 F.3d at 1136. Therefore the first question that the Court must address is whether plaintiff was an at-will employee.

Plaintiff asserts that she was not an at-will employee because the personnel handbook entitled her to a performance evaluation prior to termination.[16] Plaintiff relies

**16.** Defendants' argument that probationary employees never have a protected property interest in continued employment is without merit. To determine whether the employer intended the probationary period to be at-

on Section 6.1 of the Shawnee County Personnel Rules and Regulations which states that "the probationary period shall be considered as a working tests [sic] of the employee's ability to perform adequately in the position to which he/she is appointed." Plaintiff also relies upon Section 6.3 of the Shawnee County Personnel Rules and Regulations which states:

Prior to the expiration of an employee's original or extended probationary period, the appointing authority shall notify the employee and the Director of Human Resources that the employee will be dismissed for [sic] demoted, or that the probationary period has been extended, or that the employee has been given permanent status. Prior to any action, a performance evaluation shall be made.

Plaintiff apparently asserts that the personnel handbook created an implied contract that she could not be fired unless her termination was for cause.

 Plaintiff's claim is without merit for two reasons. First, the personnel rules mandate that plaintiff is entitled to a performance evaluation, but they do not mandate that plaintiff be terminated only for cause. Therefore, regardless of the outcome of any performance evaluation, probationary employees could be terminated for any reason. The personnel

rules did not create a substantive property interest in continued employment for probationary employees. Second, a written personnel policy, standing alone, is not sufficient to establish an implied contract of employment for a term of specific duration. Under Kansas law, personnel rules which are not bargained for cannot form an express or implied contract of employment as they are merely a unilateral expression of "company policy." *Riddle v. City of Ottawa*, 12 Kan.App.2d 714, 754 P.2d 465 (1988); see *Conaway*, 853 F.2d at 794 ("Kansas law holds that a unilateral expression in a personnel manual, which is unbargained for, cannot alone be the basis for an employment contract.") (citing *Rouse v. Peoples Natural Gas Co.*, 605 F.Supp. 230, 232 (D.Kan.1985)). In this case, plaintiff cites the employee handbook without corroborating evidence. This is insufficient under Kansas law to create a protected property interest in continued employment. Plaintiff's due process claim is therefore without merit as a matter of law.[17]

### III. Kansas Whistleblower Act Claim

Plaintiff's final claim is that defendants unlawfully terminated her employment, in violation of the Kansas Whistleblower Act, K.S.A. § 75–2973, because she engaged in

---

will, the Court must look to the relationship created between the parties. Defendants cite *Richardson v. City Of Albuquerque*, 857 F.2d 727 (10th Cir.1988), which involved a probationary employee whose employment contract provided that the appointment was tentative and might be terminated at any time during the probationary period if the employee was not suitable. *Id.* at 732. The contract also provided that the change from probationary to nonprobationary status required positive action at the end of the period, or the employee would be dismissed. Defendants cite no authority for the proposition that a probationary employee can never have a protected property interest in continued employment and the Court is not aware of

any case which stands for that blanket determination. See, e.g., *Patrick v. Miller*, 953 F.2d 1240 (10th Cir.1992) (when personnel rules made no distinction between probationary and nonprobationary employees, alleged probationary employee entitled to same rights as nonprobationary employees).

17. The gist of plaintiff's due process claim is that she was not allowed to complete her probationary period because of defendants' retaliatory action in terminating her employment for exercising her First Amendment rights. Essentially, plaintiff is re-stating her free speech claim as a due process claim. The better mechanism by which to examine this claim is the First Amendment analysis.

protected speech regarding matters of public concern and reported jail pharmacy violations to Roberts of the KSNA. Defendants argue that the Kansas Whistleblower Act protects only state agency employees-not county employees. Plaintiff agrees that she cannot bring a statutory cause of action under Section 75–2973, but in response to defendants' summary judgment motion she asks the Court to allow her to proceed on a common law cause of action for whistleblowing. The pretrial order (Doc. # 22), which was filed on November 27, 2001, alleges only a statutory cause of action for whistleblowing, and defendants oppose plaintiff's attempt to convert her statutory claim to a common law claim at this late stage in the proceedings.

■ As an initial matter, plaintiff has not complied with local rules regarding amendment of pleadings. Under D. Kan. Rule 15.1(a), "a motion to amend shall set forth a concise statement of amendment sought to be allowed, with the signed original, and one copy of the proposed amended pleading, attached." Plaintiff has not attached a copy of her proposed amended complaint. The Court is therefore in no position to evaluate the sufficiency of her claim. Moreover, her request for leave to amend is untimely. The deadline for adding additional parties or otherwise amending the pleadings was July 11, 2001. See Scheduling Order (Doc. # 9) filed June 11, 2001. For this reason alone the Court overrules plaintiff's motion. See *Smith v. Bd. of County Comm'rs Of Johnson County, Kan.*, 96 F.Supp.2d 1177, 1193 (D.Kan. 2000) (citing *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir.1995) (district court did not abuse discretion by overruling motion to amend where defendant attempted to assert new claim one month before trial); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990) (untimeliness alone sufficient basis for denial of leave to amend); *First City Bank v. Air Capitol*

*Aircraft Sales, Inc.*, 820 F.2d 1127, 1132–33 (10th Cir.1987)).

■ In addition, plaintiff's request for leave to amend is without merit because it is futile. Refusal to grant leave to amend is justified when the amendment will be futile. See *Zhu v. Countrywide Realty Co., Inc.*, 160 F.Supp.2d 1210, 1223 (D.Kan. 2001) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993)); see also *United States v. Anderson*, 2001 WL 950963, (10th Cir.2001); *DeHaan v. United States*, 2001 WL 30239, (10th Cir.2001).

■ Kansas courts recognize a cause of action for retaliatory discharge where an employee is terminated for reporting to company management or law enforcement serious legal violations by co-workers or the employer. See *Koehler v. Hunter Care Centers*, 6 F.Supp.2d 1237, 1241 (D.Kan.1998) (citing *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988)). The substance of plaintiff's whistleblowing claim, however, is the same as her First Amendment claim: plaintiff alleges that she was terminated in retaliation for speaking out about unlawful practices at Shawnee County jail. Under Kansas law, the rule is that "an adequate alternative remedy precludes a common-law retaliatory discharge action." *Merkel v. Leavenworth County Emergency Med. Serv.*, 2000 WL 127266, at *12 (D. Kan. Jan. 4, 2000) (quoting *Flenker v. Willamette Indus., Inc.*, 266 Kan. 198, 209, 967 P.2d 295, 303 (1998)). When "allegations underlying plaintiff's state claim are the same as those underlying [her][S]ection 1983 claim ... [S]ection 1983 clearly provides an alternative vehicle for plaintiff to pursue any injuries stemming from [her] alleged retaliatory discharge [and] does not limit plaintiff's right of redress in any significant way." *Merkel*, 2000 WL 127266, at *12. In Merkel, plaintiff alleged that defendants violated his right to free speech under the

First Amendment and Section 1983 and also that they discharged him due to his speech in violation of Kansas state law. As in this case, plaintiff did not attempt to argue that his remedy under Section 1983 was inadequate. Even though the Merkel court granted summary judgment on plaintiff's First Amendment claim, it found that the existence of an adequate alternative remedy precluded plaintiff's state law retaliatory discharge claim. *Id.*

■ In this case, plaintiff's claim is precluded because the First Amendment and 42 U.S.C. § 1983 provide plaintiff with an adequate alternative remedy. See *Bunker v. City of Olathe, Kan.*, No. 99–2217–GTV, 2001 WL 230364, at *2–4 (D.Kan. Feb.21, 2001) (whistleblowing retaliatory discharge claim precluded by 42 U.S.C. § 1983 First Amendment claim); *King v. Unified Sch. Dist. No. 500, Wyandotte County, Kan.*, No. 92–2414 EEO, 1993 WL 141868, at *1 (D.Kan. Apr.23, 1993) (same); *Groh v. City of Lenexa, Kan.*, No. 90–2073 GTV, 1991 WL 79662, at *3 (D.Kan. Apr.16, 1991) (same).

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. # 24) filed December 3, 2001 be and hereby is **SUSTAINED in part.** The Court grants defendants' motion for summary judgment as to plaintiff's Fourteenth Amendment Due Process claim and her claim pursuant to the Kansas Whistleblower Act, K.S.A. § 75–2973. Defendants' motion is **OVERRULED** with respect to plaintiff's claim that defendants violated her right to free speech under the First Amendment and 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that plaintiff's claims of civil conspiracy pursuant to 42 U.S.C. § 1985(2), intentional infliction of emotional distress, and defamation be and hereby are **DISMISSED** without prejudice. In addition, all claims as to Jan Petit be and hereby are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to amend her complaint to set forth a common-law cause of action for whistleblowing be and hereby is **OVERRULED.**